O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CAVS USA, INC., | ) | Case No. CV 11-05574 DDP (JEMx) |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | ) | |
| SLEP-TONE ENTERTAINMENT CORPORATION d/b/a SOUND CHOICE, a North Carolina corporation, | ) | [Docket No. 8] |
| Defendants. | ) | |

Presently before the court is Defendant Slep-Tone Entertainment Corporation's Motion to Dismiss Plaintiff's Complaint under FRCP 12(b)(2) ("Motion"). Having reviewed the parties' moving papers and heard oral argument, the court denies the Motion and adopts the following Order.

**I. BACKGROUND**

Plaintiff CAVS USA, Inc. ("CAVS") and Defendant Slep-Tone Entertainment Corporation ("Slep-Tone") are both companies in the karaoke industry. Slep-Tone is a North Carolina corporation with its principal place of business in North Carolina. Slep-Tone

produces and distributes karaoke products and music content. CAVS is a California corporation with its principal place of business in California. CAVS also sells karaoke products and content, principally karaoke players. (First Am. Compl. ¶¶ 2-8.)

According to Slep-Tone, it is currently involved in trademark infringement litigation against a third, Ohio karaoke company. Slep-Tone claims that the Ohio company sells computer hard drives and CAVS karaoke machines preloaded with unauthorized Slep-Tone karaoke content. Therefore, in June 2011, Slep-Tone sent an email to approximately one-thousand people - including at least seventy California residents - who it believed were involved in the karaoke industry and may have purchased such equipment. (Decl. of Kurt J. Slep in Supp. of Mot. at 5-6.) In the email, Slep-Tone offered amnesty from a lawsuit for the unauthorized use of Slep-Tone's karaoke content "on an illegal karaoke hard drive or CAVS unit." Slep-Tone also asked the email recipients to forward the email to anyone else meeting the conditions set forth therein. (Id., Ex. 1; see also id. ("You may be aware that [Slep-Tone] is bringing lawsuits against the users of illegal karaoke CAVS and computer hard drive units . . . .").)

In response, CAVS filed this action against Slep-Tone, alleging trade libel and unfair competition. CAVS filed a First Amended Complaint on July 12, 2011. On September 28, 2011, Slep-Tone filed this Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction.

**II.   LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a suit for lack of personal jurisdiction. The

plaintiff has the burden of establishing that jurisdiction exists, but need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). "[U]ncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).

District courts have the power to exercise personal jurisdiction to the extent authorized by the law of the state in which they sit. Fed. R. Civ. P. 4(k)(1)(A); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm statute authorizes personal jurisdiction coextensive with the Due Process Clause of the United States Constitution, see Cal. Civ. Code § 410.10, this Court may exercise personal jurisdiction over a nonresident defendant when that defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The contacts must be of such a quality and nature that the defendants could reasonably expect "being haled into court there." World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980).

**III. DISCUSSION**

Personal jurisdiction may be asserted on the basis of either general jurisdiction or specific jurisdiction. General jurisdiction exists over a nonresident defendant when "the

3

defendant engages in 'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state." Schwarzenegger, 374 F.3d at 801. Where a defendant is subject to a state's general jurisdiction, he "can be haled into court in that state in any action, even if the action is unrelated to those contacts." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984). "It is the nature and extent of the contacts that determines whether they are 'substantial' or 'continuous and systematic.' Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006); see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) ("Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.").

Because the court finds Slep-Tone subject to general jurisdiction in California, it is not necessary to discuss specific jurisdiction. Slep-Tone has had substantial, continuous, and systematic business contacts with California for a number of years. First, from 2008 to 2011, Slep-Tone's product sales to California have accounted for 17 to 25 percent of their total sales each year, in amounts ranging from $120,000 to $350,000. This amount is both substantial and significantly higher than would be expected on a per capita basis. Slep-Tone makes some of its product sales through distributors, including its primary distributor located in

4

California. In 2007, Slep-Tone used six distributors, including two in California. As of February 2010, Slep-Tone uses only two distributors, including its primary distributor in California and a "very small" distributor in Illinois. Slep-Tone also sells products to and interacts directly with California residents through a website, which incorporates online accounts, product ordering, a moderated message board, and website "affiliates" - including some websites located in California - who earn commissions for sale referrals. (Opp'n at 2-3, 5-6.[1])

In addition to sales, Slep-Tone now derives the majority of its profits from licensing and litigation settlements, also substantially connected to California. To provide its karaoke content, Slep-Tone initially obtains rights from thousands of music licensors, many of whom are located in California given the state's "large share of the operations of the music industry." Based on these rights, Slep-Tone has targeted California for licensing and litigation settlements. In particular, Slep-Tone has authorized a company to act as its agent, investigating infringement in California. Similarly, Slep-Tone sends its own field investigators to investigate potentially infringing karaoke venues in California. Slep-Tone also certifies California karaoke venues and hosts as legal product users, and places advertisements in magazines distributed throughout California to encourage hosts to obtain proper licenses. (Id. at 1-5.)

---

[1] Slep-Tone does not dispute any of these facts, which are set forth in declarations and exhibits attached to CAVS Opposition. As required, the court therefore takes these allegations as true for purposes of this Motion.

As a result of these efforts, Slep-Tone has entered into karaoke content licensing agreements with at least twenty-four California companies, and recently filed a lawsuit in this District. See <u>Slep-Tone Entm't Corp. v. Backstage Bar & Grill</u>, No. CV 11-08305 (C.D. Cal. filed Oct. 6, 2011). The lawsuit names approximately 70 California defendants and has so far resulted in more than $180,000 in settlement payments from these defendants. Thus, Slep-Tone has not only continuously and systematically availed itself of the privilege of doing private business in California, but has made substantial use of this District Court to engage in California-based business litigation.[2] (<u>Id.</u> at 5.)

On the other hand, as Slep-Tone argues, it does not meet some of the more traditional, physical factors for general jurisdiction. Slep-Tone does not have employees, offices, or other property in California. Nor does Slep-Tone have a California business license or agent for service of process, or pay state taxes. (Reply at 4-5.)

The court finds, however, that Slep-Tone's continuous, substantial, and targeted contacts with California approximate and substitute for such a physical presence. As the Ninth Circuit has explained, "determining whether a corporate defendant's contacts in a particular case are substantial and continuous turns on the 'economic reality of the defendants' activities rather than a mechanical checklist.'" <u>Tuazon</u>, 433 F.3d at 1173 (quoting <u>Gates</u>

---

[2] Less significant but still worth noting, Slep-Tone also sent the June 2011 email that is the subject of this action to at least 70 California residents. Since the late 1980s, Slep-Tone has regularly attended an annual industry trade show in California as well. (<u>Id.</u>)

Learjet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir. 1984)). Indeed, despite being physically located in North Carolina, Slep-Tone's business model and revenues suggest that it may even conduct a majority of its business in California.

Further, a three-judge Ninth Circuit panel has found general jurisdiction on similar facts. See Gator.com Corp v. L.L. Bean, Inc., 341 F.3d 1072 (9th Cir. 2003), vacated as moot on reh'g en banc on basis of settlement, 398 F.3d 1125 (9th Cir. 2005). Although the decision is not controlling, this court, like many other district courts, finds its reasoning persuasive. There too, the Defendant had "few of the factors traditionally associated with physical presence, such as an official agent or incorporation." Id. at 1078. But as the panel noted:

> It is increasingly clear that modern businesses no longer require an actual physical presence in a state in order to engage in commercial activity there. With the advent of 'e-commerce,' businesses may set up shop, so to speak, without ever actually setting foot in the state where they intend to sell their wares. Our conceptions of jurisdiction must be flexible enough to respond to the realities of the modern marketplace.

Id. at 1081. Thus, the panel found sufficient for general jurisdiction: "L.L. Bean's extensive marketing and sales in California, its extensive contacts with California vendors, and the fact that, as alleged by Gator, its website is clearly and deliberately structured to operate as a sophisticated virtual store in California." Id. at 1078.

The same can largely be said of Slep-Tone here. It is true that L.L. Bean is a bigger company. As a result, L.L. Bean "sold millions of dollars worth of products in California," id. at 1074, and Slep-Tone's website is presumably not so elaborate. However,

7

as alleged by CAVS, Slep-Tone's website also operates as an interactive virtual store, with online accounts, communication, and affiliates. And Slep-Tone in fact derives a much greater portion of its profits from sales to California than did L.L. Bean - approximately 17 to 25 percent, versus 6 percent. Id. Likewise, Slep-Tone's primary distributor, and now one of only two distributors, is located in California. Also, Slep-Tone's California sales are still substantial beyond their own relative importance to Slep-Tone, amounting to hundreds of thousands of dollars each year.

Moreover, in other ways, Slep-Tone's California contacts are more significant and targeted than L.L. Bean's were in Gator. As discussed, Step-Tone's primary business involves licensing music rights, often from California parties, then pursuing licensing and litigation settlements. According to CAVS, Step-Tone particularly targets California for these settlements, as evidence by its: (1) authorizing an agent to investigate California infringement; (2) sending its own field investigators to investigate California venues; (3) certifying California venues and hosts as legal product users; (4) advertising in magazines distributed throughout California to encourage such licensing; (5) entering into licensing agreement with dozens of California companies; and, finally (6) litigating in this District against numerous California defendants, leading to substantial settlement payments.

For these reasons, the relevant facts here are similar to those in Gator, and notably distinct from those in the Ninth Circuit and Supreme Court decisions cited by Slep-Tone, where the courts declined to find general jurisdiction. In particular,

8

1  although the Ninth Circuit has found occasional licensing and
2  product sales, as well as interactive websites, insufficient on
3  their own, Slep-Tone has also allegedly targeted California for
4  systematic advertising and infringement-claim investigation and
5  settlement.  Cf. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d
6  1218, 1225-27 (9th Cir. 2011) (discussing relevant Ninth Circuit
7  decisions).  Also, unlike the defendant in Helicopteros, Slep-Tone
8  "has not made a single 'package' purchase from a forum vendor or
9  cashed a check on a forum bank; instead, it ships very large
10 numbers of products to California and maintains ongoing contacts
11 with [its California distributor].  Nor are any of [Slep-Tone's]
12 contacts occasional or infrequent." Gator, 341 F.3d at 1078.
13     In sum, where a corporation not only makes continuous and
14 substantial sales to a forum through its interactive website and
15 primary distributor, but also targets that forum through systematic
16 licensing and claims investigation and settlement - as well as
17 significant affirmative litigation - the corporation can fairly
18 expect to be haled into court there.  The court therefore finds
19 general personal jurisdiction and denies Defendant's Motion to
20 Dismiss.

22 IT IS SO ORDERED.

25 Dated: January 17, 2012

                                    DEAN D. PREGERSON
                                    United States District Judge