O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CAVS USA, INC., | ) | Case No. CV 11-05574 DDP (JEMx) |
| Plaintiff, | ) | **ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |
| v. | ) | [Dkt. Nos. 63 & 64] |
| SLEP-TONE ENTERTAINMENT CORPORATION d/b/a SOUND CHOICE, a North Carolina corporation, | ) | |
| Defendants. | ) | |

Presently before the court are Plaintiff CAVS USA Inc.("CAVS")'s Motion for Partial Summary Judgment and Defendant Slep-Tone Entertainment Corporation d/b/a/ Sound Choice ("Slep-Tone" or "Sound Choice")'s Motion for Summary Judgment. Having considered the parties' submissions and heard oral argument, the court adopts the following order.

**I. BACKGROUND**

CAVS is a California corporation that designs, manufactures, and distributes hardware for karaoke music, including machines and players that use compression technology known as MP3 + graphics

1  ("MP3+G") file compression.  (Han Decl. ¶ 2.)  The MP3+G format is
2  a compressed data format that allows thousands of songs to be saved
3  onto a medium.  (Id.)  Prior to the MP3+G format, the primary
4  karaoke media format was the compact disc + graphics ("CD+G")
5  format.  (Id. ¶ 4.)  CD+Gs had limited memory but could be uploaded
6  onto the JB 99 CAVS karaoke machine ("JB-99"). Defendant Sound
7  Choice sells karaoke content in the form of CD+G discs.
8       In June 2011, Sound Choice sent an email (the "Email") to
9  fewer than 1,000 email addresses of people involved in the karaoke
10 industry.  (Slep Decl. ¶ 7.)  The Email stated:

> **This is an**
> **OFFER OF AMNESTY**
> **from a lawsuit**
> **for the use of Sound Choice Karaoke Music**
> **on certain CAVS Machines or preloaded Karaoke hard**
> **drives.**
>
> You may be aware that Sound Choice is bringing lawsuits against the users of illegal karaoke CAVs and computer hard drive units (http://thekiaa.org/the-lawsuits.html.)
>
> Sound Choice is willing to grant you amnesty from a lawsuit for your unauthorized use of Sound Choice content on an illegal karaoke hard drive or CAVS unit in exchange for information concerning your purchase, on the following two conditions:
>
> 1. The unit must have been purchased from one of the following websites:
>
> [list of seven websites]
>
> or from someone using one of the following ebay user names
>
> [list of three user names]
>
> or purchased from the store:
>
> Karaoke Kandy Store (aka Lightyear Music)
> [address]
>
> 2. AND the hard drive or CAVS unit was purchased by you and you did not receive any Sound Choice discs as part of

2

>   your purchase, or the discs you did receive with Sound
>   Choice songs were Super CDGs (possibly DVDs with
>   thousands of songs).
>
>   If you meet these 2 conditions and will cooperate and
>   provide us the information we need about your hard drive
>   or CAVS purchase this is your chance to be granted
>   amnesty against our lawsuits.
>
>   [...]
>
>   If you know anyone who meets these conditions, please
>   forward this email to them. [. . .]

(Decl. Susan B. Meyer in Support of Plaintiff's Motion for Partial Summary Judgment, Exh. D.)

Plaintiff CAVS filed a First Amended Complaint alleging trade libel and unfair competition. CAVS now moves for summary judgment on all issues except for damages, and Sound Choice moves for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine dispute of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there

is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Electric Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." <u>Id.</u>

**III. DISCUSSION**

    **A. Litigation Privilege**

Sound Choice moves for summary judgment, arguing that it enjoys absolute immunity to claims of trade libel and unfair competition based on California's doctrine of litigation privilege under California Civil Code § 47(b). "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." <u>Silberg v. Anderson</u>, 50 Cal. 3d 205, 212 (1990). The doctrine "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." <u>Rusheen v. Cohen</u>, 37 Cal. 4th 1048, 1057 (2006). Whether a communication is related to a judicial proceeding is determined by looking to its function in the process, not only its content. "[T]he <u>communicative act</u>-be it a document filed with the court, a letter between counsel or an oral statement-must function as a necessary or useful step in the litigation process and must serve its purposes." <u>Rothman v. Jackson</u>, 57 Cal. Rptr. 2d 284, 292 (Ct. App. 1996).

Sound Choice argues that the litigation privilege applies to the Email because at the time it was sent, it was engaged in litigation against Charles M. Polidori and his company, Karaoke Kandy Store, Inc., for "selling equipment and media that had been loaded with unauthorized, counterfeit copies of Slep-Tone's SOUND CHOICE®-branded karaoke accompaniment tracks." (Slep Decl. ¶ 2.) Kurt Slep, President of Slep-Tone, stated:

> The defendants in that litigation had made sales of equipment under various company names, websites, and eBay

5

> usernames, though all of their sales emanated from one location.
>
> In discovery, the defendants demanded to see evidence we had gathered regarding their activities. The evidence had been gathered by a private investigator working for an industry group, the Karaoke Industry Alliance of America, not under Slep-Tone's direct supervision. After the defendants made their discovery request, we learned that the private investigator's evidence had been lost or was otherwise unavailable.

(Id. ¶¶ 3-4.)  Sound Choice sent the Email to "a list of email addresses we had compiled as being owned by persons involved in some way with the karaoke industry, including venues that feature karaoke entertainment, karaoke system operators, and others. That list had fewer than 1,000 addresses on it."  (Id. ¶ 6.)  Mr. Slep states that

> [t]he email in question was sent in order to attempt to obtain new evidence for use in our case, by requesting that evidence from persons who may have purchased infringing systems from the defendants. The defendants were identified in the email using the store name, eBay usernames, and websites known by us to have been used by the defendants.
>
> Because we have filed many lawsuits against users of unauthorized, counterfeit materials, we believed it to be necessary to offer amnesty to induce those persons to come forward.

(Id. ¶¶ 7-8.)  Sound Choice argues that because the Email was sent for the purpose of gathering evidence in the Karaoke Kandy Store litigation, it is covered by the litigation privilege.

CAVS argues that the litigation privilege does not apply because (1) the purportedly libelous statements about CAVS products were extraneous and without sufficient connection to the litigation insofar as the Email makes no mention of the particular litigation and the Karaoke Kandy complaint makes no mention of CAVS or its products; (2) the Email was an excessive publication to 1000 or more direct recipients without a proven interest in the litigation; and (3) the Email was published to nonparticipants and is therefore outside of the scope of the privilege.

The court finds that there is an issue of material fact as to whether there was a logical relation between the Email and the litigation.  The Karaoke Kandy Store complaint does not mention CAVS players, nor does the Email mention the case directly.  The Email was apparently sent to Sound Choice's full Rolodex, which included "persons involved in some way with the karaoke industry, including venues that feature karaoke entertainment, karaoke system operators, and others."  (Sound Choice Mot., Slep Decl. ¶ 6.)  The breadth of this group, combined with the lack of direct reference to the litigation on the face of the Email, attenuates the logical relation of the Email to the litigation and raises a question of fact as to whether it is appropriate to grant Sound Choice the "extraordinary protection" of the litigation privilege.  See Rothman v. Jackson, 57 Cal. Rptr. 2d. at 292 (The litigation privilege "affords its extraordinary protection to the uninhibited airing, discussion and resolution of disputes in, and only in,

7

1  <u>judicial or quasi-judicial arenas</u>. Public mudslinging, while a less
2  physically destructive form of self-help than a public brawl, is
3  nevertheless one of the kinds of unregulated and harmful feuding
4  that courts and their processes exist to prevent.")
5      The court finds that a reasonable finder of fact could
6  determine that the Email is not logically related to the <u>Karaoke</u>
7  <u>Kandy Store</u> litigation and therefore that the statements it
8  contains are not protected by the privilege.
9      **B. Trade Libel Claim**
10         **1. Whether Email Is Defamatory**
11     CAVS argues that it has established its trade libel claim with
12 uncontested facts.  Trade libel is the publication of "an
13 intentional disparagement of the quality of property, which results
14 in pecuniary damage to plaintiff."  <u>Nichols v. Great Am. Ins. Cos.</u>,
15 215 Cal. Rptr. 416, 419 (Ct. App. 1985).  CAVS points to two
16 sentences in the Email that use the word "illegal" to establish
17 disparagement:
18     (1) "You may be aware that Sound Choice is bringing
19     lawsuits against the users of illegal karaoke CAVs and
20     computer hard drive units . . . ."
21     (2) "Sound Choice is willing to grant you amnesty from a
22     lawsuit for your unauthorized use of Sound Choice content
23     on an illegal karaoke hard drive or CAVS unit in exchange
24     for information concerning your purchase on the following
25     two conditions."
26 (Decl. Meyer, Exh. D.)  CAVS asserts that calling its units
27 "illegal" is disparaging on its face.
28

8

According to Sound Choice, the Email does not call the units "illegal." In sentence (1), it argues, "illegal" modifies "karaoke" and not "CAVS unit," and the phrasing, if inept, indicates that the content on the machines is illegal, not that the machines themselves are illegal. In other words, Sound Choice is expressing concern with CAVS units and computer hard drive units loaded with "illegal karaoke" tracks. In sentence (2), on Sound Choice's reading, "illegal" is a redundancy, restating the previously mentioned "unauthorized use of Sound Choice content." CAVS, in contrast, asserts that in both cases the word "illegal" is an adjective modifying "CAVS unit."

"The question whether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court. However . . . some statements are ambiguous and cannot be characterized as factual or nonfactual as a matter of law. In these circumstances, it is for the jury to determine whether an ordinary reader would have understood the article as a factual assertion." Kahn v. Bower, 284 Cal. Rptr. 244, 249 (Ct. App. 1991)(internal quotation marks and citations omitted).

The court agrees that calling a product "illegal" is disparaging on its face but finds that there is an issue of material fact as to whether Sound Choice has done so in the Email. Here, both the defamatory and non-defamatory interpretations may be reasonable, in large part because the two sentences are inartfully composed. It is unclear what "illegal" is modifying in the phrase "illegal karaoke CAVS unit." It could be modifying either "karaoke Cavs unit," taken as expressing a single idea, or modifying only "karaoke." On the former interpretation, the units themselves are

9

being referred to as illegal; on the latter, only the content is illegal. Because the sentences are not clearly constructed, the only conclusion to be drawn from a grammatical analysis is that their meaning is ambiguous. Additionally, even if the overall impression from the sentences is that the CAVS units are illegal, the Email taken as a whole arguably presents a context in which it becomes more clear that the illegal content of the machines is what is being referenced, not the illegality of the CAVS units and hard drives themselves.

CAVS argues that it has presented evidence that the Email has in fact been interpreted in the defamatory sense. CAVS presents a declaration from a karaoke systems manager stating that the Email caused him to believe that CAVS products are illegal.[1] (Seiflein Decl. ¶ 4.) This declaration alone cannot overcome the ambiguity of the language of the Email and of the sentences taken in context. The court finds that there is an issue of fact as to the defamatory character of the Email and that it is a question that should be submitted to a jury.

### 2. Damages

The court finds that there is also a triable issue of fact as to whether CAVS suffered damages from the Email. CAVS' expert compared the growth in CAVS sales between 2000 and 2005, subsequent to CAVS' introduction of new digital technology (the JB-99

---

[1] As discussed below, the other two declarations are from karaoke machine resellers who report that the Email caused their customers to believe that CAVS machines are illegal. (See Decls. of Kmetova and Morhaim.) Because these declarants do not state that they believed that CAVS machines are illegal, but instead attribute that belief to their customers, these statements are hearsay. CAVS has not provided any exception under which they are admissible.

machine). She compared that rate of growth to the 2010 to 2015 period, subsequent to the introduction of touchscreen and "all-in-one" karaoke systems, and asserts that it is a "reasonable assumption that growth following the introduction of its innovative new products in 2010-2012 would have resulted in growth at least comparable and analogous to that during the prior period of introduction in 2000-2005, namely an annual rate of 16.5%." (Wilson Report 2.) She asserts that "[i]t is a reasonable assumption that, but for the actions of Sound Choice, CAVS would have maintained or even grown this 30% of the market at the 16.5% rate earlier achieved. Even assuming conservatively that CAVS' market share would have remained the same, one-fifth or 20% of its customers would be replacing their equipment each year. Therefore, CAVS' market share in 2011, but for the interference of Sound Choice would have been 3,150 purchasers of karaoke machines." (Id.)

CAVS' expert provides no basis for the assumption that sales of CAVS' 2010 model would be similar to that of its 2002 and 2004 models. Technological advancements and modifications are not equally attractive or significant, and the context into which such technologies are introduced - here, the world of karaoke - may also be changing. Additionally, CAVS' expert has not provided any evidence to support her claim that the Email was the "but-for cause" of the decline in sales. Sound Choice's expert presents evidence that, to the contrary, CAVS' sales were in decline prior to the Email and that the Email did not reduce the average number of units sold per month in the year that followed. (Crandall Report 4-8 & Exh. 1.)

11

CAVS also asserts that the declarations establish that it lost actual sales due to the Email. However, the two statements that would establish that the Email caused customers to not purchase CAVS units appear to be hearsay. Karaoke retail store owner and wholesaler Leonard Morhaim stated that "some of my customers have opted not to purchase CAVS players based upon their beliefs that CAVS products were illegal." (Morhaim Decl. ¶¶ 3-4.) Likewise, Stephan Kmetova, also a karaoke equipment seller, reports that "As a result of the June 2011 Mass Email, my customers, including businesses known as Chopsticks, Porter House, Pachos, and others who also received the email, have opted not to purchase CAVS players based upon their beliefs that CAVS products were illegal and out of fear of a lawsuit." (Kmetova Decl. ¶ 4.) Offered for the proposition that the Email caused customers to refrain from buying CAVS units, these statements are hearsay. The only non-hearsay statement is from Philip Seiflein, a manufacturer of high-end and specialized karaoke systems, who asserts that "[a]s a result of the June 2011 Mass Email, I believe that CAVS products are illegal and I have refrained from purchasing any CAVS products." (Seiflein Decl. ¶¶ 3-4.) It is unclear whether Mr. Seiflein, a karaoke system manufacturer, would normally purchase CAVS units as part of his professional activities; while he stated that he refrained from purchasing any CAVS units, he did not state that he would otherwise have purchased them.

**3. Conclusion on Trade Libel**

The court finds that there are material issues of fact as to the defamatory nature of the Email and as to whether CAVS suffered damages caused by the Email.

**C. Unfair Competition Claim**

Because the court finds that there are issues of fact as to the elements of CAVS' trade libel claim, it also finds that summary judgment is not appropriate as to its unfair competition claim.

**IV. CONCLUSION**

For the reasons stated above, both Motions for Summary Judgment are DENIED.

IT IS SO ORDERED.

Dated: March 21, 2013

DEAN D. PREGERSON
United States District Judge

13